UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KELLI LYNCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:19CV635 RLW ) |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying the application of Kelli Lynch ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (ECF No. 13), and Defendant has filed a brief in support of the Answer (ECF No. 16). For the reasons set forth below, the Court affirms the decision of the Commissioner.

### I. Procedural History

Plaintiff filed her application for DIB under Title II of the Social Security Act on October 16, 2015. (Tr. 281-82) Plaintiff claimed she became disabled on November 24, 2014[2] because of cervical spine with delayed fusion; displacement of cervical disc without myelopathy;

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
[2] In the Decision, the ALJ noted Plaintiff previously protectively filed unsuccessful applications which were denied on June 23, 2015. The ALJ further found no basis to reopen this determination, thus rendering the onset date as June 24, 2015. (Tr. 85)

inflammatory arthritis; arthritis of inflammatory bowel disease; fibromyalgia; asthma; diabetes mellitus; celiac disease; esophageal dysmotility; enteropathic arthritis; and depression/anxiety. (Tr. 208-09, 281) Plaintiff was initially denied relief on March 14, 2016. (Tr. 206, 208-12) At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on January 8, 2018. (Tr. 137-79, 216) By decision dated May 9, 2018, the ALJ found Plaintiff was not disabled. (Tr. 85-98) On January 22, 2019, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-4) Thus, the ALJ's decision stands as the final decision of the Commissioner.

## II. Medical and Other Relevant Evidence Before the ALJ

At the hearing before the ALJ, Plaintiff's attorney stated Plaintiff had severe inflammatory arthritis in multiple joints, a history of cervical disc surgery, radiculopathy in the right arm, headaches, dysphagia, sjogren's syndrome, osteoarthritis in the lumbar and thoracic spines, and degenerative disc disease in the cervical spine. Plaintiff testified she was single and was able to drive to the grocery store and Walmart. She lived with her 85-year-old father. Plaintiff had three associate degrees and most recently worked as a trauma operating room nurse at Barnes Jewish Hospital. Plaintiff quit her job due to pain. Plaintiff testified she experienced pain from inflammatory arthritis, fibromyalgia, migraines, and neck problems. She rated her neck pain as eight out of ten. Plaintiff also had pain in both arms, and she rated the pain between five and eight. In addition, Plaintiff testified she experience pain in her fingers and hands due to carpal tunnel syndrome. Her fibromyalgia pain was in her thighs and deltoids, which she described as "sharp white-hot stabbing." The pain also went to her hip and leg, which caused her to fall down. Movement made her pain worse, but her pain improved with the medications hydrocodone, tramadol, and tizanidine. (Tr. 139-52)

2

Plaintiff listed several doctors including Dr. Hana Tepper, Plaintiff's primary care physician; Dr. Kae Chang for GI issues; Dr. Jeffry Kreikemeier for celiac disease; and Dr. Bobby Shah for chronic bronchitis and asthma. Plaintiff previously saw Dr. Prabha Ranganathan, a rheumatologist, but stopped seeing Dr. Ranganathan after being told nothing more could be done other than seeing a pain management doctor. Plaintiff was prescribed a cane. She testified that lower back surgery was recommended but her insurance did not cover it. (Tr. 152-55)

Plaintiff further testified she no longer saw any mental healthcare providers. She saw Dr. Beverly Field for about four months but stopped treatment after Dr. Field advised Plaintiff needed to deal with her pain and attend a support group. On a normal day, Plaintiff went to bed at 11:00 p.m. and woke up between 8:30 and 9:00 a.m. She bathed, brushed her teeth, and got dressed. She prepared all her meals because she was sensitive due to celiac disease. However, Plaintiff did not perform any household chores. Plaintiff's father hired a cleaning company. She was able to do laundry with assistance from her father. Plaintiff stated she could lift less than 10 pounds and walk one block. She went to the grocery store once a week for about an hour, and the grocery clerks and Plaintiff's father helped her lift the bags. During the day, Plaintiff watched TV and used social media on her phone. She attended mass every Sunday. In addition, Plaintiff recently vacationed with a friend at Shaker Village in Kentucky on two occasions, and she flew to Ireland with her father for a three-week vacation, visiting Ireland, Scotland, and England. Plaintiff testified she took naps during the day, even while on vacation. She was unable to drive for long periods of time and carried a pillow everywhere. (Tr. 155-64)

A vocational expert ("VE") also testified at the hearing. Plaintiff's past jobs included registered nurse which could transfer to light and sedentary positions in the nursing profession. The ALJ also asked the VE to assume a hypothetical individual of Plaintiff's age, education, and

3

past jobs. The individual was limited to work the full range of light exertional level with additional limitations. The person could frequently reach, handle, and finger bilaterally; occasionally climb ropes and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, and crouch; never crawl, work at unprotected heights, or around moving mechanical parts; and work in a noise environment up to the moderate levels. The VE stated the individual could not perform any of Plaintiff's past work as actually or generally performed. However, the person could work as a nurse consultant, office nurse, and patient care coordinator. The VE further stated her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). Ignoring the transferability of skills, the individual could work as a router and photocopy machine operator. Further, if the person was limited to work at the full range of sedentary exertion, he or she could work as a nurse consultant. However, if the individual was absent from work three days per month, all work would be precluded. (Tr. 164-76)

In a Function Report – Adult, Plaintiff reported during the day she took a shower, dressed, took medication, cared for pets, prepared meals, took naps and rest breaks, watched TV and movies, did devotions and Bible study, completed household chores, and listened to music. (Tr. 325)

The medical evidence shows Plaintiff had surgery on March 13, 2015 for C5-C6 and C6-C7 herniated nucleus pulposus with right neutral foraminal stenosis and radiculopathy performed by Dr. Lukas Peter Zebala. (Tr. 791-93) Dr. Zebala performed a second surgery on November 9, 2015 after x-rays and a CT scan showed pseudoarthrosis, and Plaintiff complained of neck pain and right arm pain. (Tr. 865-67)

A consultative examination performed by Nirmale Mathew, M.D., on February 16, 2016 revealed limited range of motion and flexion in Plaintiff's neck. Dr. Mathew noted Plaintiff

4

appeared to be overdramatic. Plaintiff was in tears during the exam and was tender all over her back. Gait was normal even though she appeared to be in much pain. Dr. Mathew noted 6/18 points of tenderness. (Tr. 1005-09)

On May 17, 2016, Plaintiff began treatment with Keith D. Wilkey, M.D. Plaintiff reported she was in a car accident in February 2016 and had two cervical surgeries prior to the accident. Dr. Wilkey noted several nonphysiologic complaints, more associated with somatization, as well as hypersensitivity over the scar in the cervical spine. He also noted normal gait, with normal motor and sensation exam. Dr. Wilkey also reviewed prior imaging studies and assessed probable cervical nonunion at C5-C6; neck and low back pain, etiology undetermined; and somatization disease. He advised watching Plaintiff's cervical hardware but did not recommend surgery. Dr. Wilkey also recommended a psychiatric evaluation and follow up treatment with Dr. Shekhani for conservative pain treatment measures. (Tr. 1408-10)

On June 6, 2016, Naseem A. Shekhani, M.D., assessed cervalgia with radiculitis status post cervical fusion, bilateral upper extremity numbness, lumbago, and numbness in legs, right more than left. Dr. Shekhani recommended range of motion, stretching, and strengthening exercises, as well as Hydrocodone and Tramadol for fibromyalgia. He also suggested Plaintiff look into a long-term plan. (Tr. 1112-13)

Plaintiff was treated by Prabha Ranganathan, M.D., on June 28, 2016 during a follow-up visit for joint pain. Dr. Ranganathan noted Plaintiff was in no acute distress. She displayed tenderness over the posterior neck and low back. However, there was no synovitis in any joints, and she had full range of motion. Dr. Ranganathan assessed polyarthralgias and explained it was unlikely Plaintiff had an inflammatory arthritis. (Tr. 1323-25)

5

On November 29, 2016, Dr. Michael D. Snyder, a neurologist, examined Plaintiff for complaints of back pain, neck pain, paresthesias, and headaches. Dr. Snyder noted Plaintiff had been seen at Pain Management and took several medications which did not help but did cause sedation. On examination, Dr. Snyder noted Plaintiff was alert and not in distress. She had 18/18 fibromyalgia tender points with an exaggerated pain response. Dr. Snyder assessed bilateral carpal tunnel syndrome, status post cervical spinal fusion, lumbar degenerative disc disease, meralgia paresthetica, fibromyalgia, chronic migraine, and cervicogenic headache. Dr. Snyder believed Plaintiff would be best served by working with Pain Management and Botox injections for her migraines. (Tr. 1253-58)

A letter dated January 23, 2017 regarding Plaintiff's long term disability indicated Plaintiff was able to constantly sit, stand, walk, reach at all levels, perform bilateral fine manipulation and bilateral simple/firm grasping, climb stairs and ladders, balance, stoop, kneel, crouch, crawl, see, hear, or use lower extremities for foot controls. She could frequently lift/carry up to 20 pounds and occasionally lift/carry/push/pull up to 50 pounds. Certain activities were limited due to medication use. Jobs which Plaintiff could perform included Nurse, General Duty, and Cardiac Monitor Technician. (Tr. 1104-05)

Bobby H. Shah, M.D., evaluated Plaintiff on February 20, 2017 for a follow-up visit regarding mild intermittent asthma without complication, gastroesophageal reflux disease ("GERD"), non-morbid obesity, and obstructive sleep apnea. Dr. Shah noted he had doubts about Plaintiff's asthma diagnosis due to negative testing and symptoms out of proportion to objective findings. Dr. Shah also urged Plaintiff to stop smoking. Examination revealed no acute distress and was normal with clear respiratory, normal cardiovascular, and 5/5 musculoskeletal strength. (Tr. 1142-44)

6

## III. Discussion

### A. **Legal Standard**

To be eligible for disability insurance benefits under the Social Security Act, Plaintiff must prove he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590–91 (8th Cir. 2004)). First, the claimant must not be engaged in "substantial gainful activity." 20 C.F.R. §§ 416.920(a), 404.1520(a).

Second, the claimant must have a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." *Id.* at §§ 416.920(c), 404.1520(c). "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of

impairments would have no more than a minimal impact on her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001)).

Third, the claimant must establish her impairment meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Before considering step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). *Id.* at §§ 404.1520(e), 416.920(e). RFC is defined as "the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether the claimant can return to her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, she will not be found to be disabled; if the claimant cannot, the analysis proceeds to the next step. *McCoy*, 648 F.3d at 611.

At step five, the ALJ considers the claimant's RFC, age, education, and work experience to see if the claimant can make an adjustment to other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then she will be found to be disabled. *Id.* at §§ 416.920(a)(4)(v), 404.1520(a)(4)(v). Through step four, the burden remains with the claimant to prove she is disabled. *Brantley v. Colvin*, No. 4:10CV2184 HEA, 2013 WL 4007441, at *3 (E.D. Mo. Aug. 2, 2013) (citation omitted). At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a

significant number of jobs within the national economy. *Id.* "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

The Court must consider evidence which supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). The Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

### B. The ALJ's Decision

The ALJ's Decision conforms to the five-step process outlined above. In the Decision dated May 9, 2018, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2020. She had not engaged in substantial gainful activity since June 24, 2015, the day after the prior determination was denied. Plaintiff's severe impairments included post-surgical degenerative changes to her cervical spine status post

decompression and fusion surgery, migraines, and obesity. Medically determinable impairments which were not severe included bilateral carpal tunnel syndrome, hypertension, diabetes mellitus, celiac disease, and depression/anxiety. The ALJ also found Plaintiff's allegations of inflammatory arthritis and fibromyalgia were not medically determinable impairments. (Tr. 85-90)

The ALJ determined Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. After carefully considering the record, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work:

> with lifting 20 pounds occasionally and 10 pounds frequently; carrying 20 pounds occasionally and 10 pounds frequently; sitting for 6 hours, standing for 6 hours and walking for 6 hours. She can push/pull as much as she can lift/carry. She can bilaterally frequently reach overhead and in other directions. She [can] bilaterally frequently handle and finger. She can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. She can balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally and never crawl. She can never work at unprotected heights, never work around moving mechanical parts and work in a noise environment up to the moderate level.

Based on this RFC, the ALJ found Plaintiff could not perform her past relevant work. However, considering her closely approaching advanced age, at least high school education, work experience, and RFC, the ALJ found jobs existed in significant numbers in the national economy which Plaintiff could perform. Such jobs included router and photocopy machine operator. Based on the testimony of the VE, the ALJ determined Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Thus, the ALJ concluded Plaintiff had not been under a disability from June 24, 2015 through the date of the decision. (Tr. 90-98)

## C. Analysis of the Issues Presented

Plaintiff raises three claims in her Brief in Support of the Complaint: (1) the ALJ improperly discounted Plaintiff's subjective reports of pain; (2) the RFC assessment failed to consider the impact of Plaintiff's severe migraines; and (3) the RFC assessment is conclusory and fails to contain any rationale or reference to supporting evidence. The Defendant responds the ALJ properly considered Plaintiff's subjective allegations and determined her RFC and properly found Plaintiff could perform other work.

### 1. Plaintiff's Subjective Complaints of Pain

Plaintiff first claims the ALJ erred by improperly discounting Plaintiff's subjective reports of pain. For purposes of social security analysis, a "symptom" is an individual's own description or statement of his physical or mental impairment(s).[3] SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of his symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including the claimant's prior work record and third party observations as to her daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication;

---

[3] The Social Security Administration issued a new ruling that eliminates the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). The factors to be considered in evaluating a claimant's statements, however, remain the same. *See id.* at *13 ("Our regulations on evaluating symptoms are unchanged."). *See also* 20 C.F.R. §§ 404.1529, 416.929. This new ruling applies to final decisions of the Commissioner made on or after March 28, 2016.

11

and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). If the ALJ finds the statements inconsistent with the evidence of record, he must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012). Further, "'for a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.'" *Jones v. Astrue*, 619 F.3d 963, 969 (8th Cir. 2010) (quoting *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1152 (8th Cir. 2004) (internal quotations and citation omitted)).

Here, the record shows that the ALJ properly considered the medical evidence and based the RFC determination on all the evidence contained in the record. The ALJ found Plaintiff's symptoms relating to pain were out of proportion to the objective medical findings and other evidence in the record, including her daily activities. Here, the treatment notes from multiple doctors do not reflect the level of pain alleged by Plaintiff. For instance, Dr. Mathew noted Plaintiff was overdramatic during her examination. (Tr. 1007) Dr. Wilkey noted nonphysiologic complaints associated with somatization and hypersensitivity over the scar in her cervical spine. (Tr. 1409) Dr. Snyder stated Plaintiff exhibited an exaggerated pain response. (Tr. 1256) Likewise, Dr. Shah noted Plaintiff's symptoms were out of proportion to objective findings. (Tr. 1142) An ALJ may discount a plaintiff's allegations where evidence indicates the plaintiff is a malingerer or exaggerating symptoms for financial gain. *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (citation omitted).

Further, the record shows Plaintiff was able to perform many daily activities, as well as travel domestically and abroad for vacations. She reported she was able to care for her personal needs, take care of her pets, drive, grocery shop, prepare meals, do laundry, attend mass, and

engage in social media. (Tr. 157-60) "Evidence of daily activities that are inconsistent with allegations of disabling pain may be considered in judging the credibility of such complaints." *Reece v. Colvin*, 834 F.3d 904, 910 (8th Cir. 2016); *see also Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (noting the Eighth Circuit has found activities such as driving, shopping, bathing, and cooking were inconsistent with disabling pain); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (affirming the ALJ's analysis of claimant's subjective statement of symptoms where the claimant took care of her child, drove, fixed simple meals, performed housework, shopped, and handled money). In addition, Plaintiff was able to travel twice to Kentucky for week-long vacations and travel to the United Kingdom for a three-week trip. (Tr. 161-64) These inconsistencies between subjective complaints and daily living patterns cast doubt on Plaintiff's disability claim. *See Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016).

In sum, the Court finds the ALJ properly assessed Plaintiff's subjective complaints of pain and determined they were inconsistent with the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 559 (8th Cir. 2011).

### 2. Assessment of Migraine Headaches

Next, Plaintiff claims the ALJ failed to consider the impact of Plaintiff's migraines when determining Plaintiff's RFC. Review of the ALJ's decision demonstrates the ALJ properly assessed Plaintiff's migraine headaches. In the decision, the ALJ found Plaintiff's headaches were severe. (Tr. 87) As a result, the RFC limits Plaintiff to light work, postural restrictions, and only moderate levels of noise. (Tr. 93) In addition, Plaintiff testified during the hearing that her pain improved with medication. (Tr. 152) "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir.

2010) (internal quotation and citation omitted). The Court therefore finds the ALJ properly considered Plaintiff's migraine headaches in determining Plaintiff's RFC.

### 3. RFC Assessment

Last, Plaintiff argues the RFC is conclusory and lacks supporting evidence. A claimant's RFC is the most she can do, despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. *Goff*, 421 F.3d at 793; *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must necessarily evaluate the consistency of the claimant's subjective complaints with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005). In addition, because a claimant's RFC is a medical question, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (internal quotation marks and citation omitted). Some medical evidence must support the ALJ's RFC determination. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010); *Hutsell*, 259 F.3d at 711-12. "However, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Vossen*, 612 F.3d at 1016.

Here, review of the record demonstrates the ALJ properly considered all the medical and nonmedical evidence in determining Plaintiff's RFC that she could perform light work with some limitations and could work as a router or photocopy machine operator. It is the ALJ – and not a medical or other expert – who is charged with the duty to review all relevant, credible

evidence in the record, including all the medical and nonmedical evidence, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. A medical expert's opinion need not address the entirety of the record. Instead, it becomes a part of the record that the ALJ must consider and weigh – along with all the other evidence of record – when determining disability. *See Wagner*, 499 F.3d at 848. Because the RFC is supported by some medical evidence, it will not be disturbed. *See Baldwin v. Barnhart*, 349 F.3d 549, 448 (8th Cir. 2003); *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995).

## IV. Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion." *Id.* For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that Plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Kelli Lynch's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.

Dated this 1st day of April, 2020.

*Ronnie L. White*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**